EbWArd's, Ch. J.
delivered the following opinion of the CourtThe appellant claims the land in ContteVtef-gy, by patent, bearing date on the 10th day of April, in foe year 1781, issued upon a survey, made in the ye at 1775, on á military warrant, for 3000 acres of land* issued On the 15th day of March 1774, by the theft governor Of Virginia, by virtue of the regsd proclamation éf 1763* The appellee claims the land by virtue of & Certificate for settlement and pre-emption-, granted hfer, as heiress at law to John fioffittan deeteasfed, ⅛⅛ acCottót bf the said decedant’s improving the Samé, and raising cbm in the year 1776. Entries and surveys, both Of the Settlement and pre-emption, were made for the appellee by virtue of said certificate, upon which she hath obtaitteti. gráfttS younger ⅛⅜ the appellant’s. As foe appellaat’s claim is prior in date, and of highe r dignity ⅛ law, ⅛⅛⅛ ⅜⅛ appetitee^* he must prevail, Unless the Objections-, Or some of them, urged against his title-, are deemed Valid!
⅜⅜⅞ Objections Which Scent Worthy of ⅛⅛⅛⅜⅛⅛⅛⅛⅛ áfe-⅛ i
Fitet-^That although foe Surrey WSS mide fo fob year; 177S, ⅛0 plat and certificate foeteéf Wérfe made otft, and returned by John Floyd, the ássSiStánt surveyor, ⅜⅛ thfe Office of his principal, the Surveyor of “FiWcáStle fedén-#r, 'until May 1780: wherefore ⅛ is contended hy foe obunsel for thfe aprpdifefe, fee, Thstft ⅛⅛ ffttrfoy Ought hot t&tféfif dáítépfíorto théúprini lts©} áály-, ThAttístifé *358 survey was not of record, in the surveyor’s office, at the time of the passage of the act of 1779, it was not confirmed by that act; and, 3dly, That as the survey had not, been recorded within the time prescribed by the act of 1748, it was void. The premises contained in this objection, are true, as to the matter of fact; but none of the conclusions attempted to be drawn therefrom, are warranted by law. r
The first conclusion has been drawn from an inattention to what constitutes the survey, and what is merely evidence of its having been made, and a description of; its boundary. It is true, that every marking and bound-, ing of a piece of ground by a surveyor, is not a survey in estimation of law : but whenever it is done by a sworn surveyor, by virtue of a warrant, or other legal authority, the moment the marking of the lines and corners is completed, it is a survey made in fact, and in estimation of law : the plat and certificate is only evidence of making of the survey, containing a description of its boundaries ; to be recorded for the purpose of perpetuating the evidience thereof, and enabling the party to perfect his title, by obtaining a grant pursuant thereto. As the. certificate is only evidence of the making, it should bear date on the day of the making of the survey : sueh, it is, believed, has been the universal practice amongst all surveyors, as far back as the practice can be traced.
The survey of James Hickman, is a survey of the day on which it was made, and not of the day on which the certificate was made out, by the deputy surveyor, or returned to the office of the principal; or, in plainer terms, it is a survey made in 1775, when the lines and corners were properly marked, by a sworn surveyor, by legal authority ; and not a survey made in the spring 1780 ; at which time, no survey was in fact made. It. cannot be contended, that a surveyor is bound to make, out his certificate of survey, on the very day on which the survey is made. No one, the least acquainted with, the subject, can doubt but that such a doctrine would overturn nine-tenths of the surveys, both ancient and modern, in the country.
If the surveyor can, by law, make out the certificate, a day, or a week, after the survey is really made, he can as well do it, at any time within that period, within which,,, the law permitted it to be recorded. That the certifi-. *359 •cate was both made out and returned, within the tithe allowed by law for recording thereof, will be shewn hereafter.
The position that the survey was not confirmed by the act of 1779, because it was not recorded at the time of the passage of the act, is equally untenable. That act (a), declares, “ That all surveys of waste and unappropriated land, made upon any of the western waters, before the first day of January 1778 ; and upon any cf the eastern waters, at any time before the end of this present session of assembly, by any county surveyor, commissioned by the masters of William and Mary college, acting in conformity to the laws and rules of government then in force ; and founded upon any warrant from the governor for the time being, for military service, in virtue of a proclamation, either from the King of Great Britain, or any former governor of Virginia, shall be, and are hereby declared good and valid.”
The clause of the act recited, does not require that the survey should be of record at the passage of the act, as one of the conditions upon which the survey should be deemed “ good and valid and there is no other clause requiringit.
It is undeniable, that the words of the act embrace surveys made, whether they have been recorded or not. That the legislature did not intend to confirm those military surveys, which had, at the passage of the act, been recorded, only, is manifest: for, in the clause just recited, they declare that those made on the eastern waters, •at any time before the end of that session, shall be “good and valid.” It is impossible that those afterwards to be made, should have been recorded at the passage of the act. A survey on the eastern waters, made the very last day of the session, is expressly confirmed ; when that day would happen, was, at the passage of the act, uncertain ; and it did not happen for a considerable time after.
Can it be believed, that when the legislature did not require, and Could not possibly have intended to require, that military surveys on the eastern waters, should be of record at the passage of the act, or even during the session ; that they could have intended to require such condition as to those on the western waters, without having declared such intention. The distinction, if intended to *360 ⅛> <PWÍf' WUS too to ⅛« bee» «^⅞⅜⅞⅜⅛⅛ Thp ^egiglftturehaving enumerated .and ¡specified, parti* cularly, the qualities or conditions which the military sii.r<-my should possess, to make it gmd'wd »⅝⅛?tjiey tcpnnpt be presumed tp have intended that any .other should Re required ; but, on the -contrary, that ftll.othetP Were dispensed with.
These observations, it ⅛ believed,.furnish a complete refutation of foe third conclusion attempted to be drawit Ry.thn appellee’s .counsel-r-t4 That the survey is invalid, heqnuse>the surveyor did not record it within two months ufoerit was made, as he was directed by the actof 174⅝ <(or 4⅞1),* entitled ‘An act directing the duty of spr-yeyqrs of land.” For if we are correct in supposing, that in order to give foe survey validity, under the act passed in 1779, it wasnut necessary that it shoidd have beep recorded at the passage of that act, much less could it have been necessary that it should have been recorded within two months, the time mentioned in the pet of ;174§. The tinte of recording, if ever material befota the act of 1779, was waived by that act.
But the act of 1743, djd npt mate it material as to the right of the party. The act is purely directory to the surveyor, and annexes no forfeiture of the rigJit to th«y" surveyor’s failure to.recqrd, within any period of time*
The same section of the actof 1748, requires the surveyor to deliVer to tRe owner, a plat and certificate of th£ survey, within five months ; that he shall Certify the ri» vers, creebs, and water courses ; and the adjoining plan-tatfons,. or lands ; and shall also,.in the month of Ju.uo, annually, return to the county, court clerk’s office, a true list of all surveys made by him ; with some pther like directions : and declares, that upon his failure ip any of ¿ipse particulars,, he shall forfeit ⅜000 pounds pf tpbafe* co, &c. ’
It wouhlbe glaringly absurd, to,contend, that Repay®? the surveyor failed to furnish the party with a copy of the stwyey withfoifove nwmths ; or if, when furnished, it did pot mentipp whose land adjoined; foe party should loose hi aright. It is npt less so, to contend, that it» not: bemgrecorded within twoi months, shall, prejudice the right, when neither that, or any other law, declared any forfeiture, The act w¡a& made to direct the., survey-» *361 or aá tb his duty ; to stimulate him in the performance of it, and punish him, not the party, for his neglect Or tardiness.
The second objection to be considered, is, that an éñ-try had been made, by virtue of this warrant, in 1774, with the surveyor of Fíncasele, at a different place: This objection has no weight in it. First — Becadse' pri- or to the passage of the act of 1779, no law, or Usage having the force of láw, either authorised dr requited entries to be made with the surveyor.* updn military warrants, or upon any other rights, for any quantity of land, exceeding 400 • acres. The act Of making the entry, was, therefore, neither binding on the party, nor any other. The only method of appropriation, was* the marking an actual survey upon the ground.
■ In the second place, even if by the former existing laws and usages, an entry; and a survey Corresponding therewith, had been necessary ; that necessity was removed by the act of 1779, it having declared the siirvey “ good and valid,” without regard to these circumstances.
Upon the whole, this survey had all the qualities necessary to give it validity tinder the act of 1779 ; á'nti the certificate was made out, returned tb, ánd recorded irl the principal surveyor’s office* so aS to be taken 6Ut,and to be fo fact, returned to the lánd-ofixce within the time pre^ Scribed for the registration thereof; Which Was the only limitation, as to time, required by the law, with respect k> the old military Surveys.
This siirvey was so returned and registered ; arid the grant Issued thereon, must bé considered as regularly is* Sued, Unless the only remaining objection entitled to thé consideration df the court, shall be found sustainable.
The objection is, that itdbes riot appear, that the Warrant was returned to tfeé register’s office* with the plat and certificate of survey* So as to authorise the issuing of the grant; atrd the'counsel for the appellee contend* they have shewn it wete ridt returned.
. Considering the tinte when’ this objection tias bieerf started in the cánse far the first time, it cannot have any serious Weight* unless the étddence is clear and conclusive, to shew it was not returned. It is not ailedged in the bill,, or any of the amendments thereto, that the Warrant was not returned'with the plat and certificate ; aai single deposition in’ the cause, seems to have been fakea *362 with a view to that subject; nor is it ever hinted at, until the objection is started in this court, upon the production of a certificate from the register, that the warrant is not now found in his. office ; which certificate is filed on the opening of the cause here, under an agreement of the parties, that either of them might, at any time before the trial in this court, file such records, &c. “as related to their respective titles.”
If the objection had been made in the bill, or even started in the depositions taken, the party might have taken depositions to Have proved the warrant was returned, and had since been lost or destroyed. The fact of the absence of the warrant having been first suggested here, in the manner mentioned, all opportunity of producing proof is cut off from the appellant.
It is a principle of law, well settled, that every officer acting under the sanction of an oath, or in whom the government reposes a trust, shall be presumed to have done his duty, until the contrary be proved. This is a principle of the first necessity in society, and indispensable for the preservation of the rights of those who by law are obliged to commit their interest to the management of the public agents. The. law reposes a special trust in the officer, and the citizen is obliged to trust him. Precarious and perplexing indeed, would the .situation of the individual be, if he were obliged to prove that the officer had done his duty ; or if the presumption of his having done it, were not indulged until the contrary be shewn. This principle is equally applicable to a proceeding against the oflicer, and to a proceeding against the right of an individual, derived through the act of the officer. It would be strange, if it should be indulged in favor of the officer,who may have been guilty, and not in favoring the individual who has done no wrong.
It was the duty of the officer entrusted by the government, not to issue the grant in this case, without the warrant having been lodged with the plat and certificate. He having issued the grant, we must presume that he had the warrant, to authorise the grant, until the contrary be proven. The question then, is, has the appellee made such proof ?
M’Clanahan’s deposition and receipt are relied on. They go to prove, that he received the warrant from the surveyor of Fincastle County, in the fall 1779. But *363 this is by no means inconsistent with the presumption, that the warrant was returned with the certificate of survey, to the register’s office, in 1780; M’Clanahan acted as agent for Hickman, and it is proved that he was present in the spring 1780, with Hickman, when he received the certificate of survey from Floyd, for the purpose of having it returned to the office. It is also proved, that Hickman, at that time, declared his intention to carry his survey into grant. As they must have known, that the grant could not issue without the warrant, the presumption is strong, that M’Clanahan would deliver the warrant to Hickman; that Hickman received it; and that it must have been returned by him, with the -survey ; at least, there is nothing in the transaction inconsistent with his having done so. After the survey was recorded, it was the duty of the surveyor, to deliver both the warrant and survey to the party, to enable him to return them to the register’s office ; but no presumption could be indulged, from that circumstance, that, as he returned the survey, he did not return, also, the warrant, without which, he knew the survey would not procure him a grant.
But the register, on the 3d of May 1808, certifies, that he does not discover, from an examination of the survey, that a warrant accompanies it. This is certifying nothing more, than that he has opened the survey, and has-not found the warrant wrapped up in it. Can this possibly, at the distance of 27 years after its return, weigh any thing ?• Especially, when the military warrant was a loose paper, not required by law to be recorded. It ought to be recollected, that the papers of the land-office have been carried, since the year 1781, from Richmond to this country. The law too, at the time the grant issued, and for nine years after, required all warrants, upon which grants had issued, to be annually destroyed; It is true, the law required an account of those destroyed, to be kept; giving credit for those executed, and' charging those not executed. But the law did not require such account of the warrants destroyed, to be kept,as would distinguish them from others ; and no such account has been kept. The law requiring warrants which* were executed, to bedestroyed, may not, in all instanees, have been observed ; but we cannot say, it was not in general.
decffions'of the ¿rií¿h“coutt»! fince the 4th of no** 7bé°rea<r mr cited' in ’ fourt.
May 13th.
1¾$. circumstances, then? relied on by the appellee, ?re tpp light and trivial, to rebut the legal presumption, that the register ytas in possession of the warrant when he issued the grant.
If the parol agreement set up in the bill, were proved., which is not done satisfactorily, the principles contained case of Craig vs. Baker (a), this term, would bn decisive against it.
Some Other incidental objections were made, npt re* quiring any particular answer,
Ppon a thorough consideration of the case, we are of Opinion, that the appellants military survey, and grant thereon, are legal and valid ; and that whether the ap-pellee’s claim could be sustained in a contest with another settlement and pre-emption, or treasury warrant, or not, (which is now not necessary to be determined) the circuit erred in decreeing in fayor of the appellee, against the appellant. — ——Decree reversed,
A motion was made, on a subsequent day, for a re* fearing, and overruled’/'
In the argument of this cause, Clay, offered to read, ^roIn 3 East’s reports 199, 200, that part of lord Ellen* borough’s opinion, in which, after stating the la\v to be, that where it presumes the affirmative, the negative must bp proved, be prpceeds. to recapitulate the adjudged ca-⅞⅜⅜, in support pf this rule.
Tue Cu;ef Justice stopped him, and stated it was a violation of the act of the last session of assembly (b), wÉi,cb enacts that ‘‘ Reports and books containing, adjudged eases, in the kingdom of Great-Brhain, which decisions have taken place since the 4th day of July, 1776, shall not be read, nor considered as authority, iu; any of the courts of this, commonwealth,” fee.
Clay.- — I do not read nor rely upon the opinion nor decision, in 3 East, I only pse that book, to shew what other books contain, as Roll’s reports, fee- which are authority, but which we have not at this place. I would Use a newspaper in the same way, This is np more. a yiolation of the act, than it would be to use books reported before, but re-printed since 1776 ; and; surely they cannot be prohibited.
Allen. — -The bppks prohibited, ought not to be used, at all. If these adjudications are not evidence of the, law, they cannot be evidence of what the evidences of *365 fhe law contain. It is just as proper, as to permita negro, who is not a competent witness, to state what a white man said, and permit this to go to a jury as evidence.

November 8th.

Hughes and Wickliffe.- — There are manybooks, which are not authority, but which ought to be read and used, for the sound and clear reasoning they contain, as Poe* thier on obligations, When a book is not used as authority, it ought not to be prohibited from being used, for any other purpose. The legislature had no right to pass the law. The mind of the judge should be free, apd unshackled, to receive light from every source. He is then answerable to them, for the result of his decisions. They had no more power to pass the law, than they would to prohibit a judge the use of his spectacles.
jp-DGE Trimbre.t—
If the book is not to have credit, as law, it cannot have credit for what the evidences of the law contain. The legislature seem to have intended, entirely to prohibit the use of these books in court; and thus, to cut off the importation of them, I can have no doubt, but the legislature had the power to pass the law ⅛ question.
Edwards, Ch. J.- — I cannot doubt the power of the legislature, on this subject. It was proper that some period should be fixed by law, after which, the decision»' of the British courts, should be prohibited. I cannot think any rights are withheld or impaired, by the act in question.
By thb COURT.
The hook must not be used at all in court.*

 Chan; Rev, qo — afta of 1796-7, 76, x Brad, 292.

~Th* aft puffed the affembly in 174S, but did not take effieS oncii 175#.

 Ante 281.

 Acts of 1807, ch. 7 p. 23.

 In the cafe of Gallatin vs. Bradford fall term 1808, the court ftopped the counfel, who cited Douglafs’s reports, and declared that they W&uld not' receive a citation of a decilion, fince the 4th day of July 17:76 $ and; declared it was improper for counfel to refer to. them.